UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **JOHNNY DEKEON EDWARDS**<br>**D.O.C. # 510282** | : | **DOCKET NO. 13-cv-1934** |
| **VERSUS** | : | **JUDGE WALTER** |
| **N. BURL CAIN** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Johnny Dekeon Edwards ("petitioner") [doc 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary at Angola, Louisiana. N. Burl Cain ("respondent"), former warden, has responded.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

**I.**
**BACKGROUND**

*A. Conviction*

On December 2, 2010, the petitioner came into contact with an undercover officer during a "buy-bust" operation. Tr. Rec., pp. 37–38.[1] He sold the officer a substance, confirmed by later

---

[1] The trial record is contained in a manual attachment, located in the office of the Clerk of Court.

lab profile as cocaine. *Id.* On December 16, 2010, a bill of information was filed in the First Judicial District Court, Caddo Parish, Louisiana, charging the petitioner with 1) Distribution of a Schedule II Controlled Dangerous Substance and 2) Resisting an Officer. Doc. 24, att. 3, p. 4. The petitioner appeared with court-appointed counsel and pleaded not guilty to both charges. *Id.* On February 14, 2011, the petitioner withdrew his prior plea and pleaded guilty to Count 1 of the bill of information while the state entered a dismissal of Count 2. *Id.*

After the court ordered a pre-sentence investigation and report, the case was continued for a multiple offender hearing. Tr. Rec., pp. 1, 29–40. The state then filed a third felony habitual offender bill. *Id.* at 1, 52. In exchange for a sentence recommendation, the petitioner pleaded guilty as a second felony offender on May 24, 2011. *Id.* at 53–61. The court adopted the recommendation and the petitioner was sentenced to imprisonment for a term of 60 years without parole on May 24, 2011. *Id.*

### B. *State Collateral Review*

The petitioner did not file a direct appeal. Doc. 1, p. 2. Instead he filed a motion for production of documents on October 3, 2011, with the trial court. Doc. 24, att. 3, pp. 66–67. One week later the order was granted with respect to the guilty plea colloquy and sentencing transcript but denied with respect to the other documents. *Id.* at 68. He filed a second motion for production of documents which was denied on or before February 15, 2012. *Id.* at 69–70, 71 (see date of scanning at p. 71 for last possible date of decision). The petitioner then filed an application for post-conviction relief with the trial court on February 15, 2012.[2] *Id.* at 72–77. There he raised the following claims for relief:

---

[2] Under Louisiana law a pleading by a pro se inmate is considered filed, and so its timeliness is calculated *infra*, from the date the inmate delivers the papers to prison authorities for submission. *Stoot v. Cain*, 570 F.3d 669, 671–72 (5th Cir. 2009). Here the petitioner signed the application for post-conviction relief on January 16, 2012. Doc. 24, att. 3,

-2-

1. That he received ineffective assistance of counsel based on:

   a. his attorney's failure to investigate the allegations and laboratory report, and
   b. to inform the petitioner of any possible defense or discovery in the matter.

2. That he received an illegal sentence because parole is authorized for second offenders under Louisiana law.

*Id.* at 75. The trial court denied the application, rejecting the ineffective assistance claim on the merits. *Id.* at 84–85. The petitioner filed a Motion to Reopen Collateral review, which request was likewise denied. *Id.* at 90. The petitioner then sought review in the Louisiana Second Circuit Court of Appeal, which affirmed the trial court's ruling as to the ineffective assistance claim. Doc. 24, att. 3, pp. 115–16. The petitioner applied for supervisory and/or remedial writs to the Louisiana Supreme Court which denied review on February 8, 2013. *Id.* at 152. The petitioner applied for reconsideration which was denied on March 8, 2013. *State ex rel. Edwards v. State*, 109 So.3d 353 (La. 2013).

### C. Federal Habeas Petition

The instant petition was filed on June 14, 2013. Doc. 1, p. 11. As grounds for relief the petitioner renews his ineffective assistance of counsel claim. Doc. 1, att. 2, p. 5. He also alleges that his constitutional rights were violated when the trial court failed to provide him with certain documents. *Id.*

---

pp. 76–77. However, he does not indicate when he delivered the application for mailing. Accordingly, the effective date of filing is the date the application was received by the trial court – February 15, 2012. *See id.* at 72.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

*A. Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

*B. Procedural Default and Exhaustion of State Court Remedies*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural

default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[3] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456,

---

[3] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

## III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

### A. *Timeliness*

Here the petitioner's conviction became final thirty days after his guilty plea, when the time for seeking review expired under Louisiana law. LA. C. CR. P. art. 914(B). Therefore the petitioner's time limit for seeking review began to run on **June 23, 2011**.[4] It was tolled by his application for post-conviction relief on **February 15, 2012**, after **237 days** had run. Time began to accrue against the limit again with the Louisiana Supreme Court's denial of the motion for reconsideration on **March 8, 2013**,[5] until the filing of the instant application on **June 14, 2013**. Thus an additional **98 days** were added against the time limit, making the instant petition timely.

### B. *Exhaustion of State Court Remedies and Procedural Default*

The respondent concedes that the ineffective assistance claim is exhausted and not subject to any procedural default. We agree. He also alleges that the petitioner did not raise a claim based on the denials of the Motion for Production of Documents in the state appellate courts. However, the petitioner did complain of the denials in his Motion to Reopen Collateral Review to the trial

---

[4] Under Louisiana law, the appeal delay commences with imposition of sentence rather than conviction. *State v. Ewens*, 735 So.2d 89, 92–93 (La. Ct. App. 5th Cir. 1999), *writ denied*, 750 So.2d 179 (La. 1999).
[5] A properly filed motion for reconsideration or rehearing tolls the limitations period under § 2244(d). *Lookingbill v. Cockrell*, 293 F.3d 256, 260–61 (5th Cir. 2002).

court. There he asserted that the trial court had prematurely denied relief by ruling on his application for post-conviction while his request for documents was pending. Doc. 24, att. 3, pp. 86–87. The trial court denied the motion and the petitioner raised the issue again in his appeal to the Second Circuit. *Id.* at 90, 96–100. He also raised the issue in his application for writs to the Louisiana Supreme Court. *Id.* at 124. However, the petitioner only made a reference to federal law in his application to the Louisiana Supreme Court. *Id.* Thus he has failed to present the federal substance of his claim to the trial court and Second Circuit.[6] As he is now time-barred from doing so, the claim is subject to technical procedural default.

A procedural default may be avoided if the petitioner can show cause and resulting prejudice for his default or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). To establish cause, the petitioner must show that some external, objective factor impeded his efforts to raise the claim in a procedurally proper manner. A finding of fundamental miscarriage of justice, on the other hand, depends on a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 106 S.Ct. 2616, 2627 (1986). The factual innocence standard means that the petitioner must show a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997).

Here the petitioner offers no excuse for his failure to exhaust the production of documents claim, nor does he make the necessary showing of innocence. Therefore the procedural default stands and this court will only consider the ineffective assistance of counsel claim.

---

[6] "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 115 S.Ct. 887, 888 (1995). "[The] mere similarity of claims is insufficient to exhaust." *Id.*

### C. Substantive Analysis

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

The *Strickland* test applies to guilty plea challenges based on ineffective assistance of counsel. *Hill v. Lockhart*, 106 S.Ct. 366, 369–70 (1985). In such cases the defendant can satisfy the second prong by showing a reasonable probability that, but for counsel's errors, he would have insisted on going to trial rather than pleading guilty. *Id.* at 370. This assessment thus depends in large part on whether the evidence likely would have changed the outcome of a trial or whether any potential affirmative defenses likely would have succeeded. *Id.* at 370–71.

Here no findings were made as to counsel's performance and he was not called to testify. However, as the state courts noted, the petitioner fails to allege and the record does not show how better performance by the petitioner's attorney would have made the petitioner's success at trial

more likely. The record reveals that the petitioner was observed selling a substance to an undercover officer. Tr. Rec., p. 26. When the petitioner was arrested, he was still carrying the bills used in the operation. *Id.* Field testing of the substance showed that it was cocaine and subsequent laboratory testing of the substance confirmed the results of the field test. *Id.* at 26, 37.

The petitioner alleges that trial counsel was ineffective for failing to complete discovery, namely by not following through with laboratory testing of the substance. However, he does not allege any likelihood that further testing of the substance would have produced a different result. He also does not allege how other discovery would have led to exculpatory evidence. Furthermore, he fails to allege what defenses his attorney should have informed him about and to show any likelihood that these would have succeeded.

The petitioner also alleges that he pleaded guilty based on trial counsel's assurance that he would receive a thirty year sentence and that he only learned of the multiple offender bill when he appeared for the multiple offender hearing on May 24, 2011. However, the transcript of petitioner's colloquy with the trial court on February 14, 2011 reveals otherwise:

> COURT: All right. You understand, Mr. Edwards, the range for distribution of Schedule II if you're found guilty?
>
> DEFENDANT: Yes, ma'am—yes, sir.
>
> COURT: It's a minimum of two, maximum of 30.
>
> DEFENDANT: Yes, sir.
>
> COURT: All right. And the State also possesses what's called a multiple offender bill. If they want to file it, they can.
>
> DEFENDANT Yes, sir.

> COURT: And depending on where you fall and what prior felonies have been proven after a hearing on that matter will determine the sentence range.
>
> DEFENDANT: Yes, sir.
>
> COURT: All right. And I don't know where you fall with that category, haven't seen it for what can be proved—
>
> DEFENDANT: Yes, sir.
>
> COURT: —but if it's anywhere from—the minimum would be if they have one prior felony, 15 to 60. And depending on what other felonies they have it could be a mandatory life. Do you understand that, sir?
>
> DEFENDANT: Yes, sir.

Tr. Rec., pp. 29–30. The court went over the potential implications of the multiple offender bill once more. *Id.* at 31–33. The petitioner then pleaded guilty, affirming that he understood all of the consequences. *Id.* at 33–39. Accordingly, the petitioner's claim that he was surprised at sentencing by the existence of a multiple offender bill and the resulting 60 year sentence is without merit. He cannot show now that this knowledge would have altered his decision to plead guilty.

Thus the petitioner fails to satisfy *Strickland* under any claim, as he does not show why he might otherwise have chosen to go to trial rather than plead guilty. Accordingly, he is not entitled to habeas relief.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to

file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 25th day of May, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE